IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 10-cv-00371-CMA-MJW

MEMORIAL HEALTH SYSTEM,

    Plaintiff,

v.

AETNA HEALTH, INC.,

    Defendant.

## ORDER REMANDING CASE

This matter is before the Court on Plaintiff's Motion to Remand and for Costs and Attorney Fees (Doc. # 10). For the following reasons, the Court remands the case to state court but denies fees and costs.

### I. BACKGROUND

Plaintiff-Memorial Health System is a healthcare provider. Defendant Aetna Health, Inc. is a healthcare insurer. On March 1, 2005, Plaintiff entered into an agreement (the "Agreement" or "Hospital Agreement") with Defendant, under which Plaintiff would provide medical services to Defendant's members and Defendant would reimburse Plaintiff based upon a compensation schedule attached to the Agreement. With certain exceptions, the Hospital Services Compensation Schedule provided for reimbursement of inpatient and outpatient claims at a rate of fifty-five percent (55%) of Plaintiff's "Billed Charges." (Doc. # 1-7, ¶¶ 4-6.)

On January 13, 2010, Plaintiff filed a Complaint against Defendant in the District Court of El Paso County, Colorado. It alleges a single claim – that Defendant breached the Agreement by underpaying Plaintiff, in particular, by improperly "bundling" certain medical services and thus paying Plaintiff for less care than it actually provided. Plaintiff does not dispute that it agreed Defendant could bundle certain items. It alleges only that Defendant bundled certain items in breach of the Agreement, *i.e.*, by bundling items beyond the scope allowable under the terms of the Agreement. (Doc. # 1-7, ¶¶ 16-18.)

On February 19, 2010, Defendant removed the case to this Court, arguing the Court has federal question jurisdiction because Plaintiff's breach of contract claim is completely preempted by § 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA).[1] (Doc. # 1, ¶¶ 4-6.)

Plaintiff disagrees. It filed the at-issue motion to remand, arguing that ERISA does not preempt its claim and thus the Court lacks subject matter jurisdiction and must remand.[2] Plaintiff also seeks fees and costs in connection with this motion.

---

[1] "Congress enacted ERISA to protect the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts. The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal citation, ellipses, and quotation marks omitted)).

[2] The parties are not diverse. (Doc. # 1-7, ¶¶ 1-2.) Thus, jurisdiction cannot be had under 28 U.S.C. § 1332.

## II. DISCUSSION

The question before the Court is straightforward – whether § 502(a)[3] of ERISA completely preempts Plaintiff's state-law breach of contract claim. If it does, then the Court has subject matter jurisdiction and Plaintiff's motion will be denied. If it does not, then the Court does not have subject matter jurisdiction and Plaintiff's motion will be granted.

### A. STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction. The Court presumes no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction. *Karnes v. Boeing Co.*, 335 F.3d 1189, 1994 (10th Cir. 2003). Accordingly, the burden is upon Defendant, as the removing party, to demonstrate the Court has jurisdiction to hear Plaintiff's claim. It must satisfy its burden by a preponderance of evidence. *McPhail v. Deer & Co.*, 529 F.3d 947, 952-53 (10th Cir. 2008). Given the posture, Defendant can do this only by showing that Plaintiff's breach of contract claim is subject to "complete preemption" by ERISA's § 502(a).

### B. COMPLETE PREEMPTION

The question whether federal jurisdiction exists is generally determined according to the well-pleaded-complaint rule, under which a suit arises under federal law "only

---

[3] Section 502(a) is codified at 29 U.S.C. § 1132(a). Section 502(a)(1)(B) states that: "A civil action may be brought-(1) by a participant or beneficiary- . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

when the plaintiff's statement of his own cause of action shows that it is based" on federal law. *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)). Defendant, however, asserts that federal jurisdiction is based on complete preemption, an exception to the well-pleaded-complaint rule. *Id.*

Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). Complete preemption occurs under ERISA when a state-law claim fits within the scope of the civil-enforcement provision found in § 502(a) of ERISA.[4] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09 (2004).

In *Davila*, the Supreme Court created a two-prong test for determining whether a state law claim is completely preempted by § 502(a)(1)(B) of ERISA:

> [W]here the individual is entitled to such [claimed] coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id.* at 210 (citation omitted).

---

[4] For a discussion of the difference between complete preemption under § 502(a) and conflict preemption under § 514, *see Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1156 (10th Cir. 2004); 14B Charles Alan Wright et al., *Federal Practice and Procedure* § 3722.2 (4th ed. 2009).

4

The *Davila* test thus requires two inquiries: (1) whether the plaintiff could have brought its claim under § 502(a)(1)(B); and (2) whether no other legal duty supports the plaintiff's claim.

1) <u>Whether Plaintiff's Breach Of Contract Claim Could Have Been Brought Under § 502(a)(1)(B)</u>

The first question posed by *Davila* is whether "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. Under § 502(a)(1)(B), "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). This language contemplates a two-part showing by Defendant: (1) that Plaintiff is a plan participant or beneficiary or otherwise has standing to sue and (2) that Plaintiff is seeking benefits under the terms of a plan.

        *a)*    *Does Plaintiff Have Standing?*

Plaintiff is not a plan participant or beneficiary; it is a healthcare provider. Thus, without more, Plaintiff lacks standing to bring a claim under this provision. *Borrero v. United Healthcare of New York, Inc.*, --- F.3d ----, 2010 WL 2652456, *3 (11th Cir. July 6, 2010) ("healthcare providers generally are not considered beneficiaries or participants under ERISA and thus lack standing to sue under the statute.") (citation omitted). Defendant asserts that Plaintiff acquired "derivative standing" to assert claims on behalf of employee plan participants or beneficiaries, *i.e.*, Defendant's members. To be true, Plaintiff must have obtained written assignments from participants or beneficiaries of their right to payment of medical benefits. *Id.* ("a healthcare provider

may acquire derivative standing under ERISA by obtaining a written assignment from a participant or beneficiary of his right to payment of medical benefits.").

Defendant, as the party asserting the Court's jurisdiction, has the burden to show by a preponderance of evidence that the Court has jurisdiction. *McPhail v. Deer & Co.*, 529 F.3d 947, 952-53 (10th Cir. 2008). Accordingly, it must show that Plaintiff obtained written assignments from those members who participate in ERISA-regulated plans and for whom Plaintiff is allegedly asserting their right to benefits.

Defendant cites two pieces of evidence. First, that Plaintiff represented as part of the Agreement that "where necessary, it ha[d] obtained signed assignments of benefits authorizing payment for Hospital Services to be made directly to Hospital." *(See* Doc. # 10-2 at 8, Agreement, § 4.1.1.) Defendant also cites an affidavit of one of its employees, Ms. Jennifer Smart, in which she avers that Plaintiff submitted claims to Defendant for the at-issue healthcare services pursuant to assignments. (*See* Doc. # 15-6, Affidavit of Jennifer Smart, ¶¶ 4, 6, 8, 10.)

In its reply, Plaintiff concedes that it had hoped to acquire valid assignments from Defendant's members via their signature on the assignment forms. Plaintiff avers, however, that without the testimony of the purported assignor that it was his or her intent to assign rights under the benefit plan, a signed form alone is not sufficient to establish an assignment. The Court disagrees.

Intent is often inferred from other evidence. *See Registry Systems Intern., Ltd. v. Hamm*, No. 08-cv-00495, Slip Copy, 2010 WL 326327, *8 (D. Colo. January 20, 2010)

6

("the intent to make the assignment must be apparent, and that intent may be reflected by the written instruments executed by the parties or inferred from the acts and conduct of the assignor[,]") (citing *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 845 (Colo. App. 2007)). Here, the assignment of benefits occurred in the context of a Treatment and Consent form signed by plan participants.[5] The at-issue provision reads in part "Assignment of Benefits and Related Release of Information: I authorize direct payment of benefits to the provider for services, including physician services." (Doc. # 27 at 2-5.) From this language, the Court infers that the plan participants intended to assign their rights to Plaintiff and in fact assigned their rights to Plaintiff.[6]

Thus, given those assignments, Plaintiff had derivative standing to assert a § 502(a)(1)(B) claim on behalf of plan participants. However, that fact alone is insufficient for complete preemption; Plaintiff must actually assert a claim under the assignments. Accordingly, the Court next considers the nature of Plaintiff's claim to determine whether it is asserting a claim for benefits under the terms of an ERISA-regulated employee benefit plan.

        *b)    Is Plaintiff Seeking Benefits Under The Terms Of A Plan?*

Although the Tenth Circuit has yet to address a case with similar facts, other circuits have. *See, e.g.*, *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*,

---

[5] (Doc. # 24, ¶ 5.)

[6] Plaintiff also argues that three of four at-issue benefit plans required Defendant's written consent before these assignments could be valid and that there is no evidence that Defendant gave its written consent. (Doc. # 22 at 15-16.) Given the Court's ultimate decision, it will assume that Defendant provided written consent for its members' assignments.

7

591 F.3d 1337 (11th Cir. 2009); *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 532 (5th Cir. 2009); *Pascack Valley Hospital v. Local 464A UFCW Welfare*, 388 F.3d 393 (3rd Cir. 2004). These cases reflect a distinction in the complete preemption analysis based upon the "right of payment" versus the "rate of payment." Where a healthcare provider challenges the right to payment under an ERISA-regulated plan, the claim is preempted by ERISA. *Connecticut State Dental*, 591 F. 3d at 1347-1350. But where the provider challenges the rate of payment under a provider agreement, the claim is not preempted by ERISA. *Id.* While not bound to frame the analysis in terms of this distinction,[7] the Court will bear it in mind in deciding whether Plaintiff's claim falls within the scope of ERISA.

Both parties agree that Plaintiff was entitled only to payment for "Covered Services"[8] under the Agreement and that the basis for Plaintiff's claim is that it was paid less than it was owed.

---

[7] This distinction, though useful, can be misleading. Even a "rate of payment" claim involves a "right of payment" issue. For example, Plaintiff's claim could be characterized as one seeking to enforce Plaintiff's "right to payment" per the terms of the Agreement, yet be completely unrelated to any ERISA plan. The use of the "right to payment" tag suggests the claim would be completely preempted by ERISA. That would be incorrect. The key is the source from which the right to payment arises. If the claim involves a denial based on eligibility or coverage provisions within an ERISA benefit plan then such a claim should be brought under ERISA Section 502(a)(1)(B). But if the dispute arises from the provisions of the Provider Agreement, such a claim is not completely preempted.

[8] The Hospital Agreement defines "Covered Services" as "[t]hose health care services for which a Member is entitled to receive coverage under the terms and conditions of a Plan." (Doc. # 1-7 at 7, § 1.10.)

As to their disagreements, Plaintiff cites Defendant's bundling practice as the reason it was underpaid. It contends that because of Defendant's practice of bundling[9] certain items of medical care that Plaintiff provided to Defendant's members, Plaintiff is being paid for less medical care than it actually provided. The bundling practice is described in the payment provisions of the Hospital Agreement. The Agreement authorizes Defendant to bundle certain items of medical care while prohibiting others from being bundled.[10] For example, if Procedure B is incidental to Procedure A, then Defendant may bundle them. But if Procedure B is unrelated to Procedure A, then Defendant should not bundle them. Plaintiff argues that because it is challenging Defendant's bundling practices, it is seeking to enforce the terms not of any employee benefit plan but rather of this Agreement.[11]

Defendant, on the other hand, asserts that Plaintiff was not underpaid, because "underpayment" implies the services were "Covered Services" under their Agreement. The specific amounts Plaintiff claims it is owed reflect not "underpayment" but coverage determinations by Defendant. That is, Plaintiff seeks payment for medical services that Defendant decided were not covered by those patients' ERISA plans; thus, they are not

---

[9] Bundling refers to the practice whereby Defendant determines that Plaintiff should not have billed an item of Medical Care ("Item A") separate from another item of Medical Care ("Item B") and, therefore, disallows reimbursement for Item A.

[10] (Doc. # 1-7 at 12-13, § 4.1.4; Doc. # 10-2 at 8-9, § 4.1.4.)

[11] The parties also agreed in section 4.1.4 that disputes related to Defendant's bundling practice were to be resolved pursuant section 8.2 of their Agreement, entitled "Provider Grievance Dispute Resolution."

"Covered Services" under the Hospital Agreement. Accordingly, argues Defendant, Plaintiff is really seeking ERISA benefits by challenging Defendant's coverage determinations made under the ERISA plans.[12]

Defendant has the burden to demonstrate the Court has jurisdiction. Yet Defendant never identifies the actual terms of any ERISA plan that were construed or applied in making its "coverage determinations." Nor does Defendant cite any ERISA plan documents discussing the at-issue bundling determinations.

Defendant does provide evidence regarding four of the patients for which Plaintiff seeks reimbursement for allegedly "covered" medical services. It argues that the evidence demonstrates that at least some of the at-issue bundling determinations were actually coverage determinations and thus implicate ERISA. The first two patients, identified by the initials C.S. and D.M., involved coverage determinations based on members' coinsurance responsibilities for coinsurance, deductibles, and co-payments. Plaintiff concedes these are coverage determinations under an ERISA plan. Plaintiff disputes, however, that it is seeking payment for these amounts. The evidence supports this contention. Mr. Daniel Van Buren, an employee of Plaintiff, avers in an affidavit that Plaintiff subtracted member responsibility amounts from the amounts it seeks to recover.[13]

---

[12] (See Doc. # 15 at 15.)

[13] (Doc. # 24, Affidavit of Daniel Van Buren, ¶ 3.)

10

Defendant also identifies two other patients, W.E. and R.C., for whom medical services were purportedly bundled as part of a "coverage determination."[14] Defendant, however, does not identify any ERISA-regulated plan documents or provisions which were actually construed in making these coverage determinations.[15] Plaintiff, on the other hand, submitted evidence suggesting that Defendant's bundling determinations are made independent of any ERISA plan documents. A letter from Defendant to Plaintiff regarding the claims of patient C.S. indicates that the provisions of plan documents are *not* a consideration in bundling determinations. It suggests instead that bundling determinations are conducted *before* the claim is processed under the terms of an ERISA plan:

> Based on the available information in the file and the results of the audited charges, it is [Defendant's agent's] professional opinion that the adjusted total amount is $33,551.94. This amount is *then subject* to any PPO contracts, Worker's Compensation Statutes, Compensability of the Injury, State Regulations and Utilization Review Requirements as well as any policy provisions, limitations and exclusions.[16]

In addition, the terms of the Agreement suggest that Defendant's bundling determinations are not made in connection with the terms of any ERISA plan. The Agreement states that Defendant utilizes a commercial software package in making its bundling determinations that relies on Medicare guidelines and other industry

---

[14] (Doc. # 15-6, Affidavit of Jennifer Smart, ¶¶ 8-11.)

[15] (*See id.*)

[16] (Doc. # 25 at 4, emphasis added.)

11

standards.  It does not state that this software relies on the terms of any ERISA-regulated employee benefit plan.[17]

On balance, then, the Court has some evidence before it that Defendant's coverage determinations played some role in some of the claims for which Plaintiff alleges it was insufficiently reimbursed.  However, there is also evidence showing that coverage determinations play no role in bundling decisions.  Accordingly, the Court finds that Defendant has not demonstrated by a preponderance of evidence that Plaintiff's breach of contract claim falls within the scope of ERISA's § 502(a).  Thus, the first prong of the *Davila* test is decided in favor Plaintiff.

    2)    <u>Whether There Exists No Other Legal Duty Independent Of ERISA Upon Which Plaintiff's Claim Is Based</u>

To satisfy the second prong of the *Davila* test, Defendant must show that "there is no other independent legal duty that is implicated by [Defendant's] actions[.]."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  "[A] claim only falls within ERISA's civil enforcement scheme when it is based **solely** on legal duties created by ERISA or the plan terms, rather than some other independent source."  *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1137 (10th Cir. 2005) (emphasis added).

Plaintiff's complaint is based on an alleged breach of the Hospital Agreement.  This agreement had only two parties: Plaintiff and Defendant.  The Agreement created rights and obligations for both Plaintiff and Defendant.  One of Defendant's obligations

---

[17] (Doc # 10-2 at 8-9, § 4.1.4.)

is to pay Plaintiff for covered services at the rate of fifty-five percent of billed charges. The basis for Plaintiff's complaint is that Defendant, by bundling certain covered services with other covered services, has not reimbursed Plaintiff at the agreed upon rate.[18] Although the Agreement at times refers to the ERISA plans, mere reference to these plans is not by itself sufficient to find that Plaintiff's claim arises under or relates to ERISA. *Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc.*, 944 F.2d 752, 754 (10th Cir. 1991); *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 530 (5th Cir. 2009)

Thus, because Plaintiff's breach of contract claim is predicated on the Hospital Agreement, which is separate and independent of any plan document of an ERISA-regulated employee benefit plan, Plaintiff's claim does not satisfy the second prong of the complete preemption doctrine. That is, it is based on a legal duty independent of ERISA.

**C.     FEES & COSTS**

Plaintiff also seeks attorneys' fees and costs under 28 U.S.C. § 1447(c), which states in part that: "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

As stated by the Supreme Court, "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively

---

[18] (Doc. # 1-1 at 16, § 4.1.2.; Doc # 1-1 at 27.)

reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Given the lack of a Tenth Circuit opinion addressing similar facts, the Court cannot say that Defendant lacked any objectively reasonable basis for removal. Accordingly, the Court will deny Plaintiffs request for fees and costs.

### III. CONCLUSION

Accordingly, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Remand and for Costs and Attorney Fees (Doc. # 10). This action is REMANDED to the District Court for El Paso County, Colorado, for further proceedings. The Court DENIES Plaintiff's request for fees and costs.

DATED: August  5 , 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge